**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-50078

(Summary Calendar)
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISAAC RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas
(94 CR 48 ALL)
_____

September 5, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Isaac Rodriguez appeals his conviction for possession of a firearm by a felon under 18 U.S.C. § 922(g) (1988) and possession of a firearm with a removed serial number under § 922(k). He claims that insufficient evidence supports the jury's finding that he possessed a firearm. We affirm.

I

_____

[*] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

El Paso police officer Juan Rojas and military police officer Carl Rinker responded to a dispatch call concerning an automobile accident. Finding that a vehicle had crashed against the concrete barrier of a bridge, and that the vehicle was empty, they conducted a search of the surrounding area that included the bridge's embankment and a ditch underneath the bridge. As Rojas and Rinker concluded their search, Victor Garcia, who had been a passenger in the car at the time of the accident, approached the officers and identified himself to them. Rojas noted that Garcia was injured and asked him for his name and address for the accident report. Because the accident had occurred in a high-crime area, Rojas then performed a pat-down search of Garcia.

After the search, Isaac Rodriguez approached the accident scene. According to the trial testimony of Government witnesses, the following events ensued: Rojas asked Rodriguez to identify himself. Rodriguez responded that the car was his mother's and that it was stolen. Rojas again asked Rodriguez for identification, but Rodriguez ignored him and appeared to Rojas to be agitated and nervous. Rodriguez fidgeted with his hands and placed them in his pocket. Rojas repeatedly asked Rodriguez to remove his hands from his pockets, but Rodriguez ignored him. Because Rodriguez continually ignored Rojas' requests, Rojas asked him to come closer to be searched. Rodriguez resisted and Rojas forced him to his knees. Standing behind Rodriguez, Rojas asked him to place his hands behind his neck. Rodriguez complied, but when Rojas began to search him, Rodriguez lowered his left hand.

-2-

Rojas asked him to place his hand behind his neck, and Rodriguez reluctantly complied. However, when Rojas began the search again, Rodriguez lowered his left hand towards his waist. Seeing a gun in Rodriguez' left hand, Rojas punched Rodriguez to gain time in which to distance himself from Rodriguez and to draw his own weapon. By the time Rojas had drawn his weapon, he could no longer see a gun in Rodriguez' hand. Rodriguez struggled when Rojas attempted to handcuff him. With the help of Rinker, Rojas handcuffed Rodriguez and placed him in the patrol car. Rojas then searched the area for Rodriguez' gun, ultimately locating on the embankment what appeared to him to be the gun he had seen in Rodriguez' hand. Both Rinker and Rojas testified that the gun was not on the embankment when they conducted their initial search of the area.

Rodriguez was charged with possession of a firearm by a felon and possession of a firearm with removed serial numbers, and a federal jury convicted him on both counts. Rodriguez appeals his conviction, contending that insufficient evidence supports the jury's verdict.

## II

Rodriguez challenges the sufficiency of the evidence supporting his conviction under 18 U.S.C. §§ 922(g) and 922(k), claiming that the evidence does not support the jury's finding that he possessed the weapon found at the accident site. In our review of the sufficiency of the evidence supporting the jury's verdict, "we determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a

rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir.), *cert. denied*, 504 U.S. 978, 112 S. Ct. 2952, 119 L. Ed. 2d 575 (1992).[1] "The jury retains sole responsibility for determining the weight and credibility of the evidence," *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 2014, 131 L. Ed. 2d 1013 (1995), and we recognize that the jury is "free to choose among reasonable constructions of [the] evidence," *United States v. Garza,* 990 F.2d 171, 175 (5th Cir.), *cert. denied*, ___ U.S. ___, 114 S. Ct. 332, 126 L. Ed. 2d 278 (1993). We view the evidence, both direct and circumstantial, as well as all reasonable inferences from that evidence, in the light most favorable to the verdict. *Jaramillo*, 42 F.3d at 923; *United States v. Fierro*, 38 F.3d 761, 768 (5th Cir. 1994), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1388, 131 L. Ed. 2d 240 (1995).

Rodriguez contends that insufficient evidence supports the jury's finding that he possessed the weapon found at the accident site. The Government presented the following evidence of possession at trial: (1) Rojas saw in Rodriguez' hand a small, semi-automatic handgun that was made of either faded black or blue steel; (2) Near where he and Rodriguez struggled, Rojas found a

---

[1] We apply this standard of review because Rodriguez preserved his sufficiency of the evidence claim by moving for a judgment of acquittal at trial. We apply a stricter standard when a defendant fails to preserve a sufficiency claim. *See United States v. Galvan,* 949 F.2d 777, 782-83 (5th Cir. 1991) (applying "manifest miscarriage of justice" standard where defendant failed to move for a directed verdict or a judgment of acquittal).

-4-

gun matching that description, and that to him appeared to be the same gun he had seen in Rodriguez' hand;  (3) Rojas and Rinker did not find the gun during their initial search of the area, and believed that they would have discovered it had it been there at the time;  (4) While Rojas was reading Rodriguez his rights, Rodriguez stated that the gun was not his, although Rojas had not mentioned the weapon he had found to Rodriguez.

To sustain a conviction for possession of a firearm by a felon under § 922(g),[2] the Government must prove beyond a reasonable doubt that "(1) the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, and (3) the firearm had travelled in or affected interstate commerce." *United States v. Wright*, 24 F.3d 732, 734 (5th Cir. 1994).  Section 922(k)[3] requires the Government to prove that Rodriguez knowingly possessed the weapon found at the accident site and knew that the serial numbers on the firearm were altered or removed at the time of his possession.  *United States v. Hooker*, 997 F.2d 67, 72 (5th Cir. 1993).

Rodriguez argues that the evidence was insufficient to prove that he ever possessed the gun found at the accident site.  He

---

[2]     Section 922(g)(1) provides that:
It shall be unlawful for any person . . . who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting  commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[3]     Section 922(k) states that it is unlawful to knowingly "transport . . . any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered."

claims that (1) he never possessed the gun found at the accident site, (2) he could not have possessed the gun found at the accident site because it would have been impossible for him, under the circumstances, to have thrown the weapon down the embankment, (3) the gun found at the accident site was thrown from the bridge by another person, (4) Garcia did not tell ATF agent Victor Maldonado that Rodriguez had shown him the gun that night, and (5) the last paragraph in Garcia's written statement, in which Garcia states that Rodriguez had shown him the gun, was added after Garcia signed the document.[4]

Taken in the light most favorable to the verdict, the evidence at trial establishes that Rojas saw the gun that he found at the accident site in Rodriguez' left hand, and the jury reasonably could have inferred from this evidence that Rodriguez retrieved the gun from his clothing and then threw it down the embankment. Rodriguez argues that Rojas' testimony regarding the gun is unreliable because Rojas, by his own testimony, had very little time in which to identify something in Rodriguez' hand, and because it would have been physically impossible for Rodriguez to have thrown the gun down the embankment from a kneeling position.[5]

"[T]estimony generally should not be declared incredible as a

---

[4]     Rodriguez contends that the jury should not have considered Maldonado's trial testimony regarding Garcia's written statement as evidence of guilt. The district court admitted Maldonado's testimony for purposes of impeachment, and gave a corresponding limiting instruction. The jury is presumed to have followed that instruction. *United States v. Willis*, 6 F.3d 257, 263 (5th Cir. 1993).

[5]     *See United States v. Polk*, 56 F.3d 613, 629-30 (5th Cir. 1995) (reversing conviction of defendant where uncontroverted evidence revealed that it was physically impossible for defendant to have committed crime).

matter of law unless it asserts facts that a witness physically could not have observed or events that could not have occurred under the laws of nature." *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1991). "Only when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law." *United States v. Lindell*, 881 F.2d 1313, 1322 (5th Cir. 1989), *cert denied*, 496 U.S. 926, 110 S. Ct. 2621, 110 L. Ed. 2d 642 (1990).

Rojas saw the gun in Rodriguez' hand while he was attempting to search Rodriguez, and thus was able to view the gun at a very short distance. Because of his experience as a police officer, Rojas is necessarily more familiar with firearms than the average person. For these reasons, Rojas' testimony that, after only a quick glance, he was able to identify the general size, type, and color of the gun he saw in Rodriguez' hand is not so unbelievable on its face that it defies physical laws. *See United States v. Velgar-Vivero*, 8 F.3d 236, 240 n.11 (5th Cir. 1993) (upholding conviction based in part on defendant's destruction of evidence because "[while] it may have been difficult for a handcuffed [person] to destroy evidence in the manner so stated, we do not find that it defies the laws of physics"), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1865, 128 L. Ed. 2d 486 (1994).

Similarly, Rojas' testimony that the gun he found at the accident site was the same gun he had seen in Rodriguez' hand is not so unbelievable on its face that it defies physical laws simply because it would have been difficult for Rodriguez to have thrown

the gun down the embankment from a kneeling position. The evidence at trial showed that Rodriguez would have had to have thrown the gun over a concrete guard-rail for it to have landed on the embankment. However, Rojas testified at trial that he found the gun three to four feet down the embankment, and that the guard-rail came up to Rodriguez' chest when Rodriguez was kneeling. Thus, it would not have been physically impossible for Rodriguez, from his kneeling position, to have thrown the gun to the spot on the embankment where it was found. *See id.* (affirming conviction based in part on evidence of defendant's actions that were difficult but not impossible).

Because the events that Rojas described in his testimony are not so unbelievable on their face as to be physically impossible, Rojas' testimony supports Rodriguez' conviction. Taking the evidence in the light most favorable to the verdict, there was direct and sufficient evidence at trial to establish that Rodriguez possessed the gun found at the accident scene. Because this is the only element of his conviction under §§ 922(g) and 922(k) that Rodriguez contests, we conclude that a rational jury could have found the essential elements of the offenses beyond a reasonable doubt. *Cf. United States v. Speer*, 30 F.3d 605, 612 (5th Cir. 1994) (holding that sufficient evidence supported jury's finding that the government had proven the possession element of § 922(g), under constructive possession theory, because police officer testified at trial that co-defendant "was in visible possession of a gun"), *cert. denied*, ___ U.S. ___, 115 S. Ct. 768, 130 L. Ed. 2d

-8-

664 (1995).

III

For the foregoing reasons, we AFFIRM Rodriguez' conviction.